### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF RIVER CONSTRUCTION INC., AS OWNER AND OPERATOR OF THE RC-100 FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO. 4:22-cv-02413<br><br>Admiralty – Rule 9(h) |

### RUSSELL MARINE, LLC'S BRIEF IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Respectfully submitted,

By:    */s/ Bijan Siahatgar*

**CLARK HILL PLC**
Bijan Siahatgar
State Bar No. 18336200
bsiahatgar@clarkhill.com
909 Fannin Street, Suite 2300
Houston, Texas 77010
(713) 951-5600 – Telephone
(713) 951-5660 - Facsimile

**OF COUNSEL:**

Adam R. Diamond
State Bar No. 24092344
adiamond@clarkhill.com
David James
State Bar No. 4032467
djames@clarkhill.com
**CLARK HILL PLC**

AND

Brian W. Zimmerman
State Bar No. 00788746
bzimmerman@spencerfane.com
Irving C. Stern
State Bar No. 19175500
istern@spencerfane.com

Jennifer S. Wilson
State Bar No. 21697500
jwilson@spencerfane.com
3040 Post Oak Blvd., Suite 1300
Houston, TX 77056
Telephone:      713-552-1234
Facsimile:      713-963-0859

**SPENCER FANE, LLP**
**ATTORNEYS FOR RUSSELL MARINE, LLC**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that, on December 28, 2022, a true and correct copy of the foregoing was electronically served on all counsel of record.

*/s/ Bijan Siahatgar*
Bijan Siahatgar

ii

# **TABLE OF CONTENTS**

RUSSELL MARINE, LLC'S BRIEF IN SUPPORT OF ITS OBJECTIONS TO THE
MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION.......... i

TABLE OF CONTENTS.................................................................................................iii

STATEMENT OF ISSUES ........................................................................................... iv

SUMMARY OF ARGUMENT ...................................................................................... v

CONCLUSION ............................................................................................................. vi

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS........................... vi

TABLE OF AUTHORITIES ........................................................................................ vii

RUSSELL MARINE, LLC'S BRIEF IN SUPPORT OF ITS OBJECTIONS TO THE
MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION.......... 1

OVERVIEW .................................................................................................................. 2

FACTUAL BACKGROUND........................................................................................... 3

CONTANDA'S CLAIM AGAINST RIVER ..................................................................... 5

OBJECTIONS AND ARGUMENT ................................................................................. 6

    A.   Contanda has not plead a viable indemnity and contribution claim against River. ......... 6

      i)   Russell Marine's Objection to Contanda's claim. ...................................................... 6

      ii)   Russell Marine's Motion to Dismiss Contanda's Claim. ........................................... 7

    B.   River did not properly calculate pending freight. ....................................................... 12

    C.   River's Stipulation is illusory because it fails to provide security to Russell Marine. .. 14

      i)   River's underwriter will not post bond if it determines the demand is a settlement
tactic. 14

      ii)   The Stipulation does not commit to posting bond upon written demand................... 16

      iii)   The terms of the Underwriter's policy and reservation of rights are undisclosed...... 17

CONCLUSION ........................................................................................................... 20

## <u>STATEMENT OF ISSUES</u>

1) Whether Contanda Terminals, LLC ("Contanda") has asserted a valid claim upon which relief can be granted; whether Contanda can seek indemnity and contribution against River without an underlying claim or controversy asserted against Contanda; and whether courts in a limitation proceeding can make an advisory opinion in violation of Article III of the United States Constitution.

2) Whether it is appropriate to calculate Limitation Petitioner River Construction Inc.'s ("River") pending freight using the rental rate for one unidentified day's rental of the subject vessel when all performed work is alleged to be negligent. In conjunction therewith, whether a construction agreement that does not include stated phases becomes a multi-phase contract because invoicing includes progress updates on work tasks.

3) Whether River's Stipulation provides adequate security when it is conditional on unknown terms and conditions, unknown policy limits, does not entitle the claimant to demand a bond, and does not commit the underwriter to the jurisdiction of this Court.

## SUMMARY OF ARGUMENT

1)      Contanda asserted a claim for indemnity and contribution against River for undefined and non-existent hypothetical claims against Contanda. Its purpose is to prevent Russell Marine from being the sole claimant.[1] The Magistrate's Recommendation incorrectly conflates Russell Marine's claims for monies owed for work it performed with the claims in this Limitation Proceeding. The claims are mutually exclusive. River performed work on Contanda's sheet wall and surrounding area. No party has ever made a claim against Contanda arising out of River's work, so Contanda cannot be entitled to indemnity or contribution. Contanda improperly seeks an advisory opinion. Russell Marine contends that Contanda's claim is not validly asserted, does not state a claim upon which relief can be granted, and should be dismissed.

2)      River's pending freight of $2,000 is not properly calculated. The Construction Agreement was not a ten-phase contract. Even if it was, none of the phases were $2,000. The approval of pending freight calculated by the unsupported amount for a one day rental rate of the vessel is arbitrary and inconsistent with the contract.

3)      River's Stipulation is illusory as the letter of undertaking does not provide enforceable security to Russell Marine. The Underwriter's letter of undertaking is too conditional to be enforceable or a guarantee for Russell Marine's benefit. It is therefore no security at all.

---

[1] Third-Party Defendant Lloyd Engineering Inc. seeks attorney's fees in its answer to River's Third-Party Petition brought against it. To the extent that a request for attorney's fees in an answer constitutes a claim, which Russell Marine disputes, it is entirely derivative of Contanda's claim and should be dismissed after Contanda's claim is dismissed.

## CONCLUSION

The Court should reject the Magistrate's Recommendation because Contanda has not asserted a proper claim and River's Stipulation is not adequate security. Accordingly, the Court should dismiss Contanda's claim and dissolve the injunction by sustaining Russell Marine's Objection to Claim by Contanda Terminals, LLC, granting Russell Marine's Motion to Dismiss for Failure to State a Claim[2], and granting Russell Marine's Motion to Dissolve Injunction and Stay Limitation Proceeding.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This is a limitation proceeding concerning a construction project between Limitation Petitioner River Construction Inc. and Contanda Terminals, LLC. This general dispute began when Russell Marine filed suit against Contanda in Texas state court for its failure to pay for work Russell Marine performed at Contanda's terminal. Russell Marine's work occurred months and years before Contanda hired River. In response, Contanda filed a counterclaim alleging that Russell Marine's work was deficient and caused damage to Contanda's sheet wall, which required repair and then replacement for which Contanda hired River. Russell Marine subsequently filed a third-party claim against River alleging that River performed its repair and replacement work deficiently and is responsible for some of the damage Contanda claimed. Russell Marine has never asserted a claim against Contanda for damages arising out of River's work.

After Limitation Petitioner filed this proceeding, Russell Marine filed motions[3] challenging the claim filed by Contanda and the adequacy of the security provided by River. The parties have not engaged in any discovery in this proceeding but were in the process of discovery in the state court litigation prior to the filing of River's Complaint.

---

[2] Russell Marine filed an Objection to Contanda's claim, a Motion to Dismiss Contanda's claim for Failure to State a Claim, and a Motion to Dissolve Injunction and Stay Limitation Proceeding. (Dkt. Nos. 25, 43) The Objection and Motion to Dismiss overlap. If the Court dismisses Contanda's claim, one of these two requests could be moot.

[3] Russell Marine also moved to clarify whether all claims asserted in the state court litigation were subject to the injunction or only those asserted against River. It has withdrawn that request, without prejudice, in lieu of requesting the injunction be dissolved in the entirety.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Archer Daniels Midland Co. v. M/T American Liberty*,
   No. CV 19-10525, 2020 WL 10486336 (E.D. La. Apr. 20, 2020) ..................................... 9, 10

*Carney v. Adams*,
   208 L. Ed. 2d 305, 141 S. Ct. 493 (2020) ................................................................. 9

*Chiquita Intern. Ltd. v. Liverpool & London S.S. Prot. & Indem. Ass'n, Ltd.*,
   124 F. Supp. 2d 158 (S.D.N.Y. 2000) ................................................................... 15, 16

*Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*,
   273 U.S. 207, 47 S. Ct. 357, 71 L. Ed. 612 (1927) ............................................... 19

*In re Everglades Island Boat Tours*, LLC,
   2013 WL 315468 (M.D. Fla. Jan. 9, 2013) .................................................... 17, 18

*In re Hollis B. Corp.*,
   No. CV 2016-14, 2016 WL 8732310 (D.V.I. Sept. 30, 2016) ............................. 19

*In re Orion Marine Constr., Inc. v. All Potential Claimants*,
   No. 2:21-CV-4, 2021 WL 2779115 (S.D. Tex. July 2, 2021) ................................ 8

*In re Santa Fe Cruz, Inc.*,
   535 F.Supp.2d 853 (S.D. Tex. 2007) .................................................................. 7

*In re W.E. Hedger Co.*,
   59 F.2d 982 (2d Cir. 1932) ................................................................................ 14

*Matter of Compania Naviera Marasia S.A., Atlantico*
   466 F. Supp. 900 (S.D.N.Y. 1979) .................................................................... 15

*Matter of Star & Crescent Boat Co., Inc.*
   549 F.Supp.3d 1145 (S.D. Cal. 2021) ............................................. 10, 11, 12, 13

**Constitutional Provisions, Statutes, and Rules**

Article III of the United States Constitution .......................................................... iv, 9

Federal Rule of Civil Procedure 72 ..................................................................... 1, 3

Federal Rule of Civil Procedure 9(h) .......................................................................... i

Federal Rule of Civil Procedure Rule 12 ................................................................... 8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF RIVER CONSTRUCTION INC., AS OWNER AND OPERATOR OF THE RC-100 FOR EXONERATION FROM OR LIMITATION OF LIABILITY | **CIVIL ACTION NO. 4:22-cv-02413**<br><br>**Admiralty – Rule 9(h)** |

## RUSSELL MARINE, LLC'S BRIEF IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION[4]

Pursuant to Federal Rule of Civil Procedure 72(b)(2), Russell Marine, LLC ("Russell Marine") submits the following objections to the Memorandum and Recommendation (the "**Recommendation**") issued on December 14, 2022, Dkt. No. 58, denying its Motion to Dismiss for Failure to State a Claim, Objection to Claim by Contanda Terminals, LLC (**"Contanda"**), and Motion to Dissolve Injunction and Stay Limitation Proceeding.[5] Russell Marine respectfully contends the Magistrate Judge erred in his Recommendations for the following reasons:

- **Contanda did not plead a valid indemnity or contribution claim against River because there is no underlying claim against Contanda. Russell Marine does not seek to recover monies from Contanda arising out of the wall's failure or River's work as necessary to trigger an indemnity claim by Contanda against River. Contanda does not seek indemnification, or contribution from River for Russell Marine's failure to pay claim, nor could it because Russell Marine's failure to pay claims against Contanda are unrelated to River's work. Specifically, Russell Marine's work was performed months and years before River's involvement;**

- **Pending freight is not properly calculated. There is no evidence the contract between River and Contanda is a ten-phase contract as incorrectly determined in the Recommendation. Even assuming the invoice documents phases, the $2,000 day rate is arbitrary and inconsistent with any phase; and**

---

[4] Russell Marine understands Court Procedure 7(L) to impose a 20-page limit on the brief itself. If the Court's intent is to include the procedural sections above, Russell Marine requests leave to briefly exceed the 20-page limit.

[5] Russell Marine has contemporaneously filed a brief Motion for Reconsideration on the discrete issue of whether Contanda has properly plead a claim for which it is entitled to relief.

- **River's Stipulation is illusory as the letter of undertaking is too conditional to provide enforceable security to Russell Marine.**

## OVERVIEW

1.      Russell Marine filed an Objection to Contanda's claim, a Motion to Dismiss Contanda's claim for Failure to State a Claim, and a Motion to Dissolve Injunction and Stay Limitation Proceeding. (Dkt. Nos. 25, 43).[6] Russell Marine seeks to dismiss Contanda's claim for indemnity and contribution against River and, consequently, lift the limitation injunction. Contanda has not asserted a valid claim on which relief can be granted because there is no underlying claim brought by Russell Marine, or any other party, against Contanda for which River could indemnify Contanda or to which it could contribute. In fact, Contanda has not even asserted a claim for indemnity against River for Russell Marine's claims based on Contanda's failure to pay. Thus, the Magistrate erred in the following finding that Contanda asserted a potentially viable claim: "[i]f Russell Marine were to succeed in its claims against Contanda, and Contanda were to seek an amount for attorney's fees from Petitioner, it would directly implicate this limitation proceeding." See Dkt. No. 58 at ¶ 27.  There is no basis under these circumstances for Contanda to seek attorney's fees from Petitioner as a result of Russell Marine's claims against Contanda.

2.      The Magistrate further erred by accepting River's calculation of pending freight in determining the limitation fund. Instead of calculating the compensation River received for the components of its work that were allegedly defective, River measured pending freight, without any evidence or explanation, using the rate for one day's usage of its vessel.

3.      The Magistrate also erred by finding the Stipulation was adequate security. River's Stipulation is inadequate and illusory because it is conditional to the point of ineffectiveness.

---

[6] Russell Marine filed overlapping requests for relief because River tendered Contanda's claim to Russell Marine, requiring Russell Marine to directly defend against it.

4.      Russell Marine timely objects within 14 days of the Magistrate's Recommendations and requests a *de novo* review of the following issues and those on which it based its respective Motions. Fed. R. Civ. P. 72(b)(3).

## FACTUAL BACKGROUND

5.      Russell Marine and Contanda entered a construction contract for dock facilities at Contanda's terminal. (Dkt. No. 1 at Ex. A at ¶1.) Russell Marine encountered unexpected site conditions while performing dredge and disposal work for which it requested an equitable adjustment. (*Id.*) Russell Marine's work commenced in the fall of 2018 and continued through February 13, 2020. (*Id.* at ¶2.) The extra work performed by Russell Marine for which it seeks payment from Contanda was performed, primarily, in fall 2019. (*Id.* at ¶3.) Russell Marine completed its work on February 13, 2020, and issued an invoice on March 4, 2020. (*Id.* at ¶4.)

6.      On or about January 23, 2020, a sheet wall at the terminal buckled and/or collapsed. (Dkt. No. 1 at ¶9.) Contanda entered into a Construction Agreement with River on March 20, 2020 to repair the sheet wall and ultimately replace it. (*Id.* at ¶¶17-19.) River performed its work from April 7, 2020, through August 13, 2020. (*Id.*) This is the work subject to this proceeding.

7.      On October 14, 2020, Russell Marine sued Contanda for breach of contract and quantum meruit in state court seeking retainage in the amount of $1,775,242.29 and an equitable adjustment to the contract between Russell Marine and Contanda in the amount of $1,334,352.85. (Dkt. No. 1 at ¶ 10.) Contanda asserted a counterclaim alleging that Russell Marine did not perform its work timely, safely, or competently. (*Id.* at ¶11.) In relevant part, Contanda alleged that Russell Marine's work caused the sheet wall to buckle. (Dkt. No. 1 at Exhibit B at ¶¶ 21-22.) On January 20, 2022, Russell Marine filed a First Amended Third-Party Petition in which it alleged that River, along with other parties, caused or contributed to the failure of the sheet wall and the replacement

3

sheet wall that River constructed. (*Id.* at Exhibit C.) River then filed this Limitation Proceeding on July 20, 2022.

8.      Russell Marine's claims against Contanda seek amounts owed for its dredging and related work performed from Fall 2018 through, at the latest, February 13, 2020. Russell Marine's claims for retainage and an equitable adjustment under its contract with Contanda did not include any work related to the sheet wall. Contanda alleges that Russell Marine's work damaged its sheet wall which required Contanda to subsequently hire River. Contanda's and Russell Marine's allegations do not support Contanda's claim against River for indemnification or contribution because no part of Russell Marine's claim against Contanda is for work related to the wall.

9.      The Magistrate erred in finding that Contanda asserted a potentially viable claim because "[i]f Russell Marine were to succeed in its claims against Contanda, and Contanda were to seek an amount for attorney's fees from Petitioner, it would directly implicate this limitation proceeding." *See* Dkt. No. 58 at ¶ 27. The Recommendation incorrectly conflates Russell Marine's claims for monies owed for work it performed with the claims in this Limitation Proceeding. The claims are mutually exclusive.

13.     Contanda seeks indemnification and contribution under the March 20, 2020 construction agreement with River for work performed by River beginning April 7, 2020. (*See* Dt. No. 14 at ¶¶3-5; Dkt. No. 58 at 23.) But any indemnity and contribution claim Contanda may assert against River would have to be based on River's wrongful conduct performed in connection with its contract with Contanda (e.g. negligent/defective work or breach of the contract) and would have to arise as a result of a claim for damages against Contanda related to River's work:

> (a)     The Contractor shall indemnify, save and hold Owner its parents, subsidiaries, affiliates and employees safe and harmless from and against all liability, claims and demands, losses and damages, including, without limitation, those on account of personal injuries, death or property loss or damage to others (including, but not limited to the Contractor and its employees) arising out of or in any manner connected with the performance of this Agreement, to the extent such liability, claim, demand, injury, loss or damage is caused by (i) the negligence or willful acts or omissions of the Contractor, the Contractor's subcontractors or any other party for whom the Contractor is responsible, or (ii) the breach or default by the Contractor under the Agreement or the other Contract Documents, regardless of whether or not such a claim, cause of action, damage, loss, settlement, judgment, penalty or expense is caused in part by a party indemnified hereunder. The Contractor's indemnification obligations shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by the Contractor or a subcontractor under workers' compensation acts. disability benefit acts or other employee benefit acts.

(Dkt. No. 25-1 at §10(a)). Russell Marine does not seek to recover any monies from Contanda arising out of the wall's failure or River's work. There is simply no basis for an indemnity or contribution obligation to be triggered due to Russell Marine's claim against Contanda for retainage and dredging work Russell Marine performed, regardless of the outcome of that claim.

## CONTANDA'S CLAIM AGAINST RIVER

10.     On August 12, 2022, Contanda filed its Claim against River in this limitation proceeding. (Dkt. No. 14.) Contanda alleges that River "performed work on CONTANDA's premises beginning on or about April 7, 2020 and ending on or about August 13, 2020 (the "Incident"). (*Id.* at ¶4.) "As a result of the Incident, it is alleged that Petitioner negligently performed work from the barge *RC-100* in repairing the original wall resulting in another wall failure and other damages. Petitioner is liable to CONTANDA for tort-based contribution for any judgments or sums CONTANDA pays in damages arising from the Incident in excess of CONTANDA'S proportion of fault." (*Id.* at ¶¶5-6.) Contanda seeks indemnity and contribution from River for any judgments or sums Contanda is obligated to pay arising out of River's wall repair and replacement work from April 7, 2020 through August 13, 2020. (*Id.* at ¶¶5-8.)

11.     Notably, Contanda has not plead indemnity, contribution, or any other claim against River for Russell Marine's failure to pay claim or the dredging work Russell Marine performed

from fall 2018 through February 13, 2020. The extra debris Russell Marine encountered was not related to and occurred well before the sheet wall failed. Contanda's claim against River derives solely from River's work related to repairing and replacing the sheet wall in summer 2020.

## OBJECTIONS AND ARGUMENT

**A.     Contanda has not plead a viable indemnity and contribution claim against River.**

12.     Russell Marine does not object to the Recommendation's general summaries of the legal principles that all claimants must sign stipulations in multi-claimant proceedings or that claims for indemnity or contribution can constitute a claim. Russell Marine objects to the way those principals were applied. The claim asserted by Contanda is not valid and the Court should not consider other hypothetical but non-asserted claims, nor can it issue an advisory opinion.

*i)     Russell Marine's Objection to Contanda's claim.*

13.     Russell Marine objected to Contanda's claim against River for indemnity and contribution as not facially viable because there is no underlying claim asserted against Contanda related to River's work. (Dkt. Nos. 24 and 25.) Thus, Contanda's claim would require an inappropriate advisory opinion by the Court. (Dkt. No. 25 at ¶40.)

14. Any claim by Contanda against River is entirely disconnected from those claims brought against Contanda by Russell Marine because the work performed by Russell Marine that is the foundation of its claims against Contanda predate any work performed by River. Russell Marine's work was not and could not be the result of the wall's failure or River's work. Russell Marine completed its work on February 13, 2020. ((Dkt. No. 1, Ex. A at ¶4) Russell Marine demanded payment on which its claim against Contanda is based on March 4, 2020. (Id.) But any indemnity claim by Contanda would necessarily relate to River's work from the March 20, 2020 contract that began in April 2020.

15.     The Recommendation does not provide substantive analysis to reach its conclusion; it merely conclusorily states "Russell Marine(*sic*) attempts to undercut Contanda's claims are unavailing" with a citation to *In re Santa Fe Cruz, Inc.*, 535 F.Supp.2d 853 (S.D. Tex. 2007). The Recommendation does not explain why Russell Marine's argument(s) is unavailing. Moreover, *In re Santa Fe Cruz* supports Russell Marine's objection. In *Santa Fe Cruz*, Plaintiff David Medina filed a state court lawsuit against Santa Fe Cruz, Inc. and Zimco Marine, Inc. *Id.* at 856. Santa Fe Cruz, Inc. initiated a limitation proceeding, in which Zimco filed a claim for indemnity and contribution. *Id.* The Court held that the proceedings were multi-claimant because of Zimco's claim and Medina's claim. *Id.* While Medina sought damages from Zimco for injuries arising from Santa Fe Cruz's vessel for which Zimco sought indemnity and contribution from Santa Fe Cruz, no party seeks any damages from Contanda related to the work River performed. What makes *Santa Fe Cruz* a permissible multi-claimant case is exactly what makes Contanda's claim improper: an underlying claim.

16.     The Magistrate erred by dismissing Russell Marine's objection to Contanda's claim. To avoid repetition Russell Marine incorporates the arguments contained above and below.

*ii)      Russell Marine's Motion to Dismiss Contanda's Claim.*

17.     Russell Marine moved to dismiss Contanda's claim on two grounds: (a) there is no underlying claim against Contanda for damage to Contanda's own wall for which it can seek contribution or indemnity from River, and (b) Contanda's claim seeks an improper advisory opinion from the Court. (Dkt. 43 at ¶2; Dkt. No. 58 at 26.) Addressing Russell Marine's Motion, the Recommendation improperly determined that "The Court is not required to address the rights and obligations of the parties at this time, as Russell Marine contends." (Dkt. No. 58 at 26.) The Recommendation then disregards without substantively addressing Russell Marine's improper

7

advisory opinion argument on the ground that the case law cited by Russell Marine was not a limitation proceeding.

        a.      <u>Russell Marine objects to the Recommendation's failure to consider whether Contanda has plead a plausible claim.</u>

18.      The Recommendation cites to *In re Orion Marine Constr., Inc. v. All Potential Claimants*, No. 2:21-CV-4, 2021 WL 2779115, at *4 (S.D. Tex. July 2, 2021) for the proposition that the Court "is not required to address the rights and obligations of the parties at this time." (Dkt. No. 58 at 26.) The Magistrate erred and, therefore, Russell Marine objects to the Magistrate's failure to consider the rights and obligations of the parties within the context of Rule 12(b).

19.      *In re Orion Marine* does not deprive a party of its Rule 12(b) right to file a motion to dismiss simply because the proceedings are for limitation. In *In re Orion Marine*, the Court considered bifurcation between limitation action issues and damages. 2021 WL 2779115 at *2. The court rejected the limitation petitioner's request to adjudicate all personal injury, wrongful death, property damage, economic loss, and contribution claims against it in a single nonjury trial instead of bifurcating the damages and non-limitation components. *Id.* at *4. The District Court was not considering a 12(b) motion to dismiss, nor did it hold that the Court should not consider a motion to dismiss in a limitation proceeding as distinguished from any other case.

20.      Russell Marine objects that the Recommendation did not address whether Contanda has properly stated a claim upon which relief can be granted affecting the rights and obligations of the parties as it violates Russell Marine's rights under Rule 12(b). Russell Marine recognizes the Court does not resolve the merits at this time, but it should determine whether a claim about the rights and obligations of the parties has been properly pleaded.

b.    Russell Marine objects that the Recommendation did not consider the merits of its argument that Contanda's claim seeks an improper advisory opinion on the ground that this is a limitation proceeding.

21.    The Recommendation did not address the substantive merits of Russell Marine's contention that a proper claim had not been pleaded by Contanda because it would require an improper advisory opinion on the ground that the *Bayou Liberty* case cited by Russell Marine is "unrelated to a claim in a limitation action." (Dkt. No. 58 at 26.) But the Magistrate's apparent Recommendation that advisory opinions are permitted in limitation proceedings is not supported by jurisprudence and violates the United States Constitution.

22.    While the Recommendation is accurate that *Bayou Liberty* did not involve a limitation proceeding, the principal applies nonetheless as the United States Constitution is the supreme law of the United States. The type of claim involved in *Bayou Liberty* is immaterial. The United States Supreme Court has explained "The Constitution grants Article III courts the power to decide 'Cases' or 'Controversies.' Art. III, §2. We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *E.g. Carney v. Adams*, 208 L. Ed. 2d 305, 141 S. Ct. 493, 498 (2020). There is no exception for limitation proceedings.

23.    An advisory opinion is just as improper in a limitation proceeding as any other. *Archer Daniels Midland Co. v. M/T American Liberty*, No. CV 19-10525, 2020 WL 10486336, at *3 (E.D. La. Apr. 20, 2020). *Archer Daniels* involved a limitation proceeding in which movants filed a motion to clarify whether the limitation injunction barred state court claims against captains and crew. *Id.* at *2. The movants did not identify any specific captains and crew and instead sought a general opinion about whether unidentified not-filed actions may be subject to the injunction. *Id.* at *3. The District Court held that any opinion would be advisory and, therefore, impermissible.

*Id.* ("as claimants have not yet initiated suit against the captains and crews, they have not possibly contravened any restraining order. But 'Article III courts have jurisdiction over actual controversies; they are not permitted the luxury of issuing advisory opinions'."). This is directly comparable to Contanda's claim for indemnity and contribution for unidentified non-existent claims. Other cases similarly confirm that advisory opinions are improper in limitation proceedings. *See Matter of Star & Crescent Boat Co., Inc.*, 549 F.Supp.3d 1145, 1169 (S.D. Cal. 2021) (holding indemnification claim not ripe and called for improper advisory opinion under New Jersey and California law because no underlying judgment against party seeking indemnity).

24.     The District Court should overrule and reject the Recommendation for its failure to properly consider Russell Marine's argument that Contanda's claim requires the Court to issue an advisory opinion.

c.     <u>Contanda's claim improperly requires the Court to issue an advisory opinion and does not entitle Contanda to the relief sought.</u>

25.     To the extent the Recommendation did evaluate whether Contanda has pleaded a claim upon which it can be entitled to relief or whether it requires an advisory opinion, it did so incorrectly. The Court cannot determine whether Contanda is entitled to indemnity or contribution when there is no underlying claim being asserted against Contanda; there is no live controversy.

26.     The Recommendation's only analysis[7] regarding the validity of Contanda's claim is the determination that "there could certainly be a situation where the outcome could exceed the current stipulation amount…If Russell Marine were to succeed in its claims against Contanda, and then Contanda were to seek an amount for attorney's fees from Petitioner, it would directly implicate this limitation proceeding." (Dkt No. 58 at 27.) There are multiple problems with the finding that Contanda's claim is viable because it could seek attorney's fees from River for a

---

[7] The Recommendation recites case law and party arguments at length.

judgment by Russell Marine against Contanda. The Recommendation confuses the work done by Russell Marine and the work done by River, which are unrelated.

27.     First, Contanda has not asserted any claim against River for indemnity, contribution, or attorney's fees for any claim asserted by Russell Marine. Contanda's claim does not mention Russell Marine or Russell Marine's claims. (Dkt. No. 14) Contanda broadly seeks indemnity and contribution from River for any judgments or sums Contanda pays in damages arising from River's work.  But no party is seeking damages from Contanda for River's work. (Dkt. No. 1.) Contanda itself has not argued that its claim against River is for indemnity and contribution for Russell Marine's claim against Contanda. The Court should not find that Contanda's claim is properly pleaded based on claims Contanda has never pleaded.

28.     Second, as explained above, Russell Marine's claims against Contanda are unrelated and do not arise out of River's work. They could not be the basis for Contanda's claim against River. Contanda pleads that River's work was based on a March 20, 2020 contract, began "on or about April 7, 2020," and that River "performed work from the barge *RC-100* in repairing the original wall resulting in another wall failure and other damages." (Dkt. No. 14 at ¶¶3-5.) In contrast, Russell Marine's state court claim against Contanda is for unpaid amounts owed for dredging work performed at the terminal before River was hired. (Dkt. No. 1 at Exhibit C) Russell Marine completed its dredging work on February 13, 2020 and requested the payment in dispute with Contanda on March 4, 2020. (*Id.* at ¶12.) In fact, Contanda alleges that it was Russell Marine's defective work that required Contanda to hire River in the first place. (Dkt. No. 1 at Exhibit B at ¶21.)  Russell Marine has never filed any claim against Contanda arising out of River's work. Russell Marine's work was completed on February 13, 2020, approximately two months before River started work on April 7, 2020.

29.     There is no underlying claim against Contanda for which it can seek indemnification or contribution from River. The Recommendation tries to fill that gap by concluding that Contanda could seek indemnity and contribution for Russell Marine's claim. This is in error. Contanda has not sought and could not seek indemnity and contribution from River for Russell Marine's failure to pay claims against Contanda, or any other specific claim against Contanda. It is for this reason that Contanda's claim seeks an improper advisory opinion, fails to state a claim, and should be dismissed.

**B.     River did not properly calculate pending freight.**

30.     Russell Marine has challenged River's calculation of pending freight of two thousand dollars ($2,000), which is allegedly the day rate for the use of the vessel. (Dkt. No. 58 at 9; Dkt. No. 27 at 8.) The Recommendation adopted River's contention that the Construction Agreement was a multi-phase contract because payment "was segmented based on percentage of work completed. As the work progressed, Petitioner billed monthly for the same proportion as the estimated value of the completed portion of the work." (Dkt. No. 58 at 9.) There is no apparent contractual or legal basis for the Recommendation's conclusion that merely billing for the work completed monthly makes a contract a formal multi-phase contract.

31.     The "term 'freight' is not limited to the fare for the transportation of goods, but also may include any and all 'rewards, hire, or compensation, paid for the use of ships, either for an entire voyage, one divided into sections, or engaged by the month, or any period'." (Dkt. No. 58 at 10) (citations omitted). The Recommendation acknowledges that "pending freight is construed liberally." (*Id.*) Russell Marine contended the entire value of the contract between River and Contanda should be included in the Limitation Fund because (1) River contends the entirety of its work is subsumed into the Limitation Proceeding; and (2) the contract was not a multi-phase

12

contract. (*Id.*) Russell Marine objects to the Recommendation's finding that the contract was a "ten-phase repair contract" with "each discrete phase" separate, and the affirmation of pending freight of $2,000. (*Id.* at 10-11.) These findings are contrary to the evidence.

32.     First, the Construction Agreement is not a ten-phase repair contract. (Dkt. No. 25 at Exhibit 1.) The Construction Agreement does not set forth or identify any phases. (*Id.* at Exhibit 1 Section (1)(A)). It is one singular project. The Magistrate's finding that the Construction Agreement is a ten-phase repair contract is not supported by the Construction Agreement.[8]

33.     Second, it appears the Recommendation concluded that the Construction Agreement had ten-phases because the invoices had ten progress categories and River billed monthly. (*Id.* at Exhibit 2 at 2.) Merely because River provided progress estimates as part of its monthly invoicing after the Construction Agreement was executed does not convert the project into ten discrete phases. Having steps is not the same as having discrete phases.[9] River invoiced monthly and advised as to its steps; it did not get progress payments based upon milestone phases.

34.     Third, even if the project had ten phases, there is no support for the finding that pending freight was $2,000. The Recommendation faults Russell Marine for not providing evidence of how the Court should calculate the pending freight, determine which phases are implicated by River's allegedly negligent work, and produce a definitive and quantifiable parallel between the appropriate pending freight and the voyage. But this misapplies the law as to which party bears the burden. "The petitioner in a limitation proceeding has the burden of proving compliance with the conditions which entitle him to limit liability. He must show the value of his

---

[8] River's proposal included 13 numbered terms, not phases. They include contract terms such as "4. All other materials and fabricated items will be supplied by River Construction. 5. We can begin work immediately upon notice to proceed…12. Disposal of all scrap materials is included in our price." (*Id.* at Exhibit 2.) These are not phases. Regardless, the terms of the proposal were supplanted by the Construction Agreement.
[9] There is a distinction between steps, which every project has, and distinct project phases. For example, hanging a small picture on a wall would not generally be considered a multi-phase project with distinct phases but has various steps including taking measurements, marking the nail hole, nailing an anchor, and ensuring the picture is level.

interest in the vessel and her pending freight." *In re W.E. Hedger Co.*, 59 F.2d 982, 983 (2d Cir. 1932). It is River, not Russell Marine, that bears the burden for establishing the proper pending freight. River failed to meet its burden; specifically, River never provided any evidence supporting its claim that pending freight should be $2,000. Thus, Russell Marine objects to this finding.

35.     If the District Court agrees that the pending freight should be the value of whichever of the alleged ten invoice steps are implicated by River's alleged negligence, none of the phases are valued at $2,000. The phases range from $30,000 to $150,000. (Dkt. No. 25 at Exhibit 2.) Russell Marine has claimed River's work was negligent. It has not limited its claim to any discrete phase. Accordingly, all phases of work should be included in the pending freight calculation based on Russell Marine's contentions. Because River is the party that contends not all "phases" should be included, River has the burden of specifically showing which phases should be included and which should not. River should have identified which "phases" involved the *RC-100* and those should be included. River has failed in the discharge of its burden. No matter how the "phases" are analyzed, there is no justification or evidence for River's pending freight calculation of (allegedly) one day's rental rate of $2,000. That is not even one of the alleged phases. The pending freight calculation of one random day's rental rate is arbitrary and without evidentiary support.

**C.     River's Stipulation is illusory because it fails to provide security to Russell Marine.**

36.     Russell Marine does not dispute that letters of undertaking can be security. The problem is that River's Stipulation, which is its underwriter's letter of undertaking, is too conditional to be meaningful and is illusory. There are multiple deficiencies:

> i)     *River's underwriter will not post bond if it determines the demand is a settlement tactic.*

37.     The Recommendation recognizes that a letter of undertaking is sufficient if "the underwriter agrees on behalf of its shipowner-assured to appear and defend the claim of the other

shipowner…to satisfy any judgment…and to cause a surety company bond to be posted in the event of a subsequent demand to do so." (Dkt. No. 58 at 13) (citing *Matter of Compania Naviera Marasia S.A., Atlantico*, 466 F. Supp. 900, 902 (S.D.N.Y. 1979)). But River's underwriter imposed its own condition that eradicates the ability of Russell Marine to demand a bond.

38.     More specifically, the Stipulation provides "In no event, however, will the demand for bond or other security be made solely as a settlement tactic, nor will the undersigned insurer be responsible for payments in excess of the applicable insurance." (Dkt. No. 1-10 at 2-3.) If Russell Marine demands that bond be issued, River's underwriter is able to simply decline because it unilaterally characterizes the demand as a settlement tactic. There is nothing about the Stipulation that commits the underwriter to actually posting the bond because it can simply deem it a settlement tactic and decline, leaving Russell Marine with no security and no remedy. Thus, the purported commitment to post a bond is illusory in violation of *Matter of Compania*.

39.     The Recommendation rejects this argument by concluding that "Courts have interpreted this notion as protecting against bad faith, not an impermissible caveat." (Dkt. No. 16.) But the case referenced in the Recommendation supports Russell Marine's position. *Chiquita Intern. Ltd. v. Liverpool & London S.S. Prot. & Indem. Ass'n Ltd.*, 124 F. Supp. 2d 158, 168 (S.D.N.Y. 2000). In *Chiquita*, a claimant sought specific performance of a letter of undertaking that entitled it to demand a surety bond be filed. *Id.* at 158. The insurer argued a bond should not be required because the claimant admitted the demand was intended to increase settlement pressure. *Id.* at 168. The District Court held that the motivation was irrelevant and the underwriter must comply with the unconditional promise to issue a bond upon demand. *Id.* The critical point in *Chiquita* was that because the letter of undertaking entitled the claimant, without restriction, to demand a bond the insurer could not refuse on the ground that it was motivated by settlement.

15

40.     In contrast, River's Stipulation gives the underwriter the ability to refuse to post bond if it determines the demand is a settlement tactic. The Stipulation creates the appearance of security without actually accomplishing it. *Chiquita* demonstrates the importance of a letter of undertaking not having a settlement caveat because the claimant was successfully able to enforce the requirement to post bond, whereas River's Stipulation deprives Russell Marine of that protection based on the underwriter's unilateral determination.

> ii)     *The Stipulation does not commit to posting bond upon written demand.*

41.     The Recommendation attempts to distinguish the *El Paso Prod. GOM, Inc.* case, which supports the proposition that a proper stipulation should offer to submit a bond upon written demand by the claimant instead of court order. (Dkt. No. 58 at 16.) But regardless of *El Paso Prod. GOM, Inc.*, the Recommendation earlier quoted the *Matter of Compania Navieria Marasia* case which stands for the same proposition when describing a proper letter of undertaking: "the underwriter agrees…to cause a surety company bond to be posted **in the event of a subsequent demand to do so**." (*Id.* at 13) (emphasis added).

42.     *Chiquita* is also instructive on this issue as well. "In fact, although LOUs such as the one at issue here, including letters containing a provision for filing of a bond upon demand, are customary within the maritime industry…There is no indication as to whether the LOU contained the customary bond provision included in the instant LOU…" *Chiquita Intern. Ltd.*, 124 F. Supp. 2d 158, at 167. *Chiquita* describes as "customary" that a letter of undertaking includes a provision for filing of a bond upon demand, not requiring the claimant to obtain a court order. While letters of undertaking/stipulations are customary, the content of River's Stipulation is not. River's Stipulation is deficient because it does not entitle Russell Marine to make written demand for a bond and instead requires a court order.

  *iii)*    *The terms of the Underwriter's policy and reservation of rights are undisclosed.*

  43.  River's Stipulation has limiting phrases such as "strictly subject to the terms, conditions, and limits of their insurance policies…nor will the undersigned insurer be responsible for payments in excess of the applicable insurance…the liability of Underwriters, pursuant to this Ad Interim Stipulation, shall not exceed the limits of the policy to which Underwriters subscribe and shall be strictly subject to the terms, limits, and conditions of the insurance policy." (Dkt. No. 1-10.) The Stipulation is illusory, and thus does not provide adequate security because, in addition to the arguments already set forth, Russell Marine and the Court do not know what the limits of River's insurance policy are, do not know what reservation of rights the underwriter has sent to River, the underwriter has not consented to the jurisdiction of this Court, and the underwriter has not committed to abide by all orders of this Court.[10]

  44.  The Recommendation dismisses these deficiencies on the grounds that "it is regular course for a vessel owner's insurance company to execute the LOU." (Dkt. No. 58 at 17.) While Russell Marine agrees it is regular course for an insurer to execute a letter of undertaking, the problem here is the content of the letter of undertaking. It is not enough merely to execute a "letter of undertaking" if the content makes it meaningless. The Recommendation cites to *In re Everglades Island Boat Tours, LLC*, 2013 WL 315468, at *2 (M.D. Fla. Jan. 9, 2013). But *Everglades Island* actually supports Russell Marine's contention because the content of River's Stipulation is deficient when compared to the content of the stipulation accepted in *Everglades Island*. For example:

---

[10] Russell Marine raised other technical concerns as well, such as the reference to "Underwriters" in the plural which may indicate the existence of other underwriters who did not execute the letter of undertaking. The Recommendation summarily dismisses the fact that one Underwriter signed a Stipulation that says "Underwriters" as a "clerical error" without any explanation for how it determined that was a clerical error as opposed to an indication that there are other underwriters for River's policy that did not execute the document, which may be a substantive deficiency.

| **River's illusory Stipulation** (Dkt. No. 1-10) | *Everglades Island* **stipulation**[11] |
|---|---|
| Not executed by River, only surety | Executed by principal and surety |
| Surety's liability "shall not exceed the limits of the policy" | Surety liability not limited to policy limits |
| Surety's obligations "strictly subject to the terms, conditions…of their insurance policies" | Surety obligations not restricted to terms and conditions of policy |
| Surety will post bond only upon Court Order | Surety will post bond upon written demand |
| Surety has ability to decline to post bond if it deems demand made for settlement tactic | Surety has no ability to decline to post bond upon demand |
| Surety not submitted to jurisdiction of Court | Surety submitted to jurisdiction of court |
| Surety has not agreed to abide by all orders of this Court | Surety agreed to abide by all orders of relevant Court |

45.     The stipulation in *Everglades Island* is proper and drastically different from River's Stipulation. These differences are critically important, and further demonstrate that River's Stipulation is illusory, deficient, and ineffective.

    a.   River's Stipulation is subject to policy limits and terms.

46.     While the *Everglades Island* stipulation is unconditional, River's Stipulation is subject to policy limits and terms which have never been disclosed. The Underwriter's liability "shall not exceed the limits of the policy…" and is "strictly subject to its terms and conditions." (Dkt. No. 1-10). This is problematic because, for example, if the policy is eroded or has eroding limits, only has limited coverage (e.g. $100,000), or has terms that take certain (Russell Marine's) claims out of coverage or are subject to an exclusion, then Russell Marine does not actually have protection up to the amount of the limitation fund and potentially no protection at all. The security is illusory because the policy limits and terms are unknown, undefined, and could be less than the full limitation fund or eliminate the protection in the entirety. River could have easily resolved this problem (as necessary to meet its burden) by having its underwriter confirm to the Court that there are no rights reserved and the coverage amount. It has not, and this is telling.

---

[11] Case 2:13-cv-00001SPC-CM; *In re Everglades Island Boat Tours, LLC*, 2013 WL 315468 (M.D. Fla.) at Dkt. No. 2. (Exhibit A.)

47.     *In re Hollis B. Corp.,* No. CV 2016-14, 2016 WL 8732310 (D.V.I. Sept. 30, 2016.) addressed a similar stipulation that was deficient. The court rejected a stipulation in which the surety agreed to pay "in accordance with and subject to terms and condition of [owner's] insurance policy." *Id.* at *2. "[A]dequate security must provide a sufficient guarantee" to secure payment if a claimant prevails. *Id.* at *5. The court rejected the stipulation "because Hollis purports to limit its obligation to pay pursuant to the terms of its insurance policy," and therefore, was not actually security. Once the underwriter filed a new letter of undertaking stating that there are no coverage defenses or reservations of rights, the letter of undertaking was approved. *Id.* at *4. River's Stipulation limitations and caveats have been rejected by other courts and for good reason. They do not protect the claimant.

b.     <u>The underwriter did not subject itself to the jurisdiction of the Court.</u>

48.     The purpose of a letter of undertaking is for the underwriter to commit to "satisfy any judgment…" *E.g. Matter of Compania Naviera Marasia S. A., Atlantico*, 466 F. Supp. At 902. It is a substitute for the vessel itself. *Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 220, 47 S. Ct. 357, 360, 71 L. Ed. 612 (1927); *Matter of Carpe Diem 1969 LLC,* No. CV 2017-56, 2018 WL 1463687, at *2 (D.V.I. Mar. 23, 2018).

49.     Here, River's underwriter has not agreed to the jurisdiction of this Court or to abide by any rulings of this Court. The underwriter has also not made an appearance; the Stipulation was filed by River. As a result, if Russell Marine obtains a judgment against River and the underwriter does not voluntarily pay, Russell Marine will have to potentially file a second lawsuit and pursue a claim against the underwriter. The underwriter could dispute that it is subject to the jurisdiction of this Court, argue the policy has a forum or venue provision, claim that any orders from this Court are not binding against it because it was not a party to this action, and force Russell Marine

into an expensive and extensive second round of litigation against the underwriter for any number of reasons—particularly if the underwriter also contends it is not obligated to pay the judgment due to a policy exception, lack of coverage, or that it exceeds the policy limits. Each of these problems was avoided in *Everglades Island* because that stipulation was markedly different and did not have these flaws. The purpose of the security is to ensure that the complainant can recover a judgment, but River's attempt to post security leaves open the real possibility of extensive multi-year subsequent litigation against the underwriter.

50.     The Recommendation incorrectly characterizes Russell Marine's position as just asserting "that these issues will lead to its inability to recover attorney's fees" and then dismisses the argument because attorney's fees are generally not recoverable for indemnity claims. (Dkt. No. 58 at 17.) Russell Marine's concern is much broader than just attorney's fees. The identified deficiencies prevent the Stipulation from being any meaningful security at all for any claim. These issues may lead to its inability to recover a judgment, not just attorney's fees. River's Stipulation is illusory because it does not guarantee security to Russell Marine.

## **CONCLUSION**

51.     Contanda has failed to plead a plausible indemnity and contribution claim for which it is entitled to relief against River because there is nothing for which it can be indemnified or to which River can contribute. Russell Marine's claim against Contanda is unrelated to River's work as that is for monies owed for work performed before Contanda hired River. Additionally, River's pending freight calculation is inadequate as it is not supported by evidence, inconsistent with the Construction Agreement, and does not account for River's negligent work. Lastly, River's Stipulation is too conditional to be meaningful as it does not commit River's underwriter to satisfy a judgment against River. It is therefore illusory and not adequate security.

Respectfully submitted,

By:    */s/ Bijan Siahatgar*
        **CLARK HILL PLC**
        Bijan Siahatgar
        State Bar No. 18336200
        bsiahatgar@clarkhill.com
        909 Fannin Street, Suite 2300
        Houston, Texas 77010
        (713) 951-5600 – Telephone
        (713) 951-5660 - Facsimile

**OF COUNSEL:**

Adam R. Diamond
State Bar No. 24092344
adiamond@clarkhill.com
David James
State Bar No. 4032467
djames@clarkhill.com
**CLARK HILL PLC**

AND

Brian W. Zimmerman
State Bar No. 00788746
bzimmerman@spencerfane.com
Irving C. Stern
State Bar No. 19175500
istern@spencerfane.com
Jennifer S. Wilson
State Bar No. 21697500
jwilson@spencerfane.com
3040 Post Oak Blvd., Suite 1300
Houston, TX 77056
Telephone:    713-552-1234
Facsimile:    713-963-0859

**SPENCER FANE, LLP**
**ATTORNEYS FOR RUSSELL MARINE, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that, on December 28th, 2022, a true and correct copy of the foregoing was electronically served on all counsel of record.

*/s/ Bijan Siahatgar*
Bijan Siahatgar

22